UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JASON WIMBERLY,

                 Plaintiff,

-v-

ATLANTIC DIALYSIS
MANAGEMENT SERVICES, LLC,

                 Defendant.

24-CV-9269 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff Jason Wimberly, proceeding *pro se*, brings this action for disability discrimination, retaliation, and related torts and statutory violations against his dialysis provider, Defendant Atlantic Dialysis Management Services, LLC ("Atlantic"). Before the Court is Atlantic's motion to dismiss the complaint. For the reasons that follow, the motion is granted.

## I.   Background[1]

### A.   Factual and Legal Background

Jason Wimberly is a dialysis patient suffering from kidney failure and related disabilities. (ECF No. 1 ("Compl.") ¶ 5.) The dialysis treatment from Atlantic that Wimberly receives for his kidney failure is funded by Medicaid (*id.* ¶¶ 5-6), which is administered in New York through the New York State Department of Health, *Cmty. Health Care Ass'n of N.Y. v. Shah*, 770 F.3d 129, 138 (2d Cir. 2014). In particular, "Medicaid reimbursement is available to lawfully authorized transportation providers for transportation furnished to eligible Medicaid enrollees when necessary to obtain medical care covered by the Medicaid program." N.Y. Dep't of

---

[1] The facts included in this section are drawn from Wimberly's complaint and other submissions in relation to the pending motion to dismiss and presumed true for present purposes. *See Davila v. Lang*, 343 F. Supp. 3d 254, 266-67 (S.D.N.Y. 2018).

Health, Medicaid Transportation Policy Manual 11 (2023) (hereinafter, "Policy Manual"); *see also* 18 N.Y. Codes, Rules & Regulations ("N.Y.C.R.R.") § 505.10; *cf. Shakhnes v. Berlin*, 689 F.3d 244, 259 & n.11 (2d Cir. 2012) (noting that federal courts are to defer to clarifications of regulations contained in the "State Medicaid Manual"). Other than emergency ambulance transportation, transportation to and from covered medical appointments "must be prior authorized by the appropriate prior authorization official prior to payment by the Medicaid program." Policy Manual at 11; *see also* 18 N.Y.C.R.R. § 505.10(d). "The mode of transportation . . . must be decided by a medical practitioner who is directly involved in the patient's care, and therefore, best situated and qualified to determine the most appropriate mode." Policy Manual at 12. Those requests for authorization, submitted by a Medicaid recipient's medical practitioner, are called "standing orders." *See id.* at 13.

To attend his dialysis appointments, Wimberly relies on free transportation services that are funded through New York's use of Medicaid funding. (*See* Compl. ¶¶ 8, 11.) Without access to free transportation, Wimberly alleges, he faces the risk of shortened treatment time from late arrivals and having to walk home from appointments, both of which are dangerous to his health. (*Id.* ¶¶ 15-16.) Per New York's Medicaid regulations, only Atlantic may enter standing orders on Wimberly's behalf so that he receives free transportation to and from his dialysis appointments. But Wimberly alleges that Atlantic has "failed to arrange or facilitate transportation" for his appointments. (*Id.* ¶ 9.)

Wimberly also alleges that he has discussed with other Atlantic patients "shared concerns regarding transportation" (*id.* ¶ 14), and that he has "expressed to all staff the seriousness of his combination of conditions and how it leads to an especial vulnerability that must be factored into his treatment and plan of care by federal and state law" (*id.* ¶ 16). Wimberly has also observed

other patients complaining about the inadequacy of their transportation to Atlantic. (*See id.* ¶¶ 17-20.) In one instance, Wimberly was discussing with another patient his complaints regarding transportation and his plans to take legal action when a nurse advised Davita Banks, Atlantic's Director of Social Work, of the conversation. (*See id.* ¶¶ 21-22, 25.) Banks then introduced herself to the other patient, used hand gestures to try to calm them down, and promised to fix the issues underlying their complaint, but asked for more time and recommended that the other patient, "in the meantime[,] [not] listen to anything anyone else tells you [because] it's all [g]ossip." (*Id.* ¶ 22.)

### B. Procedural Background

Wimberly, proceeding *pro se*, sued Atlantic on December 5, 2024. (Compl.) Atlantic moved to dismiss the complaint on January 24, 2025. (ECF No. 22 ("MTD").) Wimberly filed a series of letters in response to the motion to dismiss accusing Atlantic's counsel of knowingly misrepresenting the law (ECF No. 23), requesting a conference (ECF No. 24), complaining that Atlantic employees requested to meet with him without counsel present (ECF No. 25), seeking a "stay" of the motion to dismiss (ECF No. 26), and accusing Atlantic's counsel of further misconduct (ECF No. 27). After the Court granted the parties' requests for a conference (ECF No. 29), Wimberly continued to submit letters, including to disqualify Atlantic's counsel (ECF Nos. 30, 31), requesting a declaratory judgment (ECF No. 32), demanding a jury trial (ECF No. 34), and again accusing Atlantic's counsel of misconduct (ECF No. 35). Wimberly has also sent several emails to the Court's chambers concerning essentially the same allegations, including two emails sent in violation of the Court's Order to cease all such direct communications. (*See* ECF No. 40.)

At the conference held on February 21, 2025, the Court directed Wimberly to file a single opposition to the motion to dismiss, which he did on March 7, 2025 (ECF No. 42 ("Opp.")).

Atlantic replied in further support of the motion on March 26, 2025.  (ECF No. 46 ("Reply").)

On April 1, 2025, Wimberly filed a letter motion for leave to file a surreply.  (ECF No. 47.)

## II.      Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must include enough facts to state a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true but need not accept as true "mere conclusory statements" reciting the elements of a cause of action.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 555.  A complaint that pleads facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

In applying those principles, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).  As such, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted).  Still, "a *pro se* complaint must state a plausible claim for relief."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).  And relevant here, though "*pro se* litigants, in many cases, are entitled to special solitude, [the Second Circuit has] not altogether excused frivolous or vexatious filings by *pro se* litigants."  *Eliahu v. Jewish Agency for Isr.*, 919 F.3d 709, 715 (2d Cir. 2019) (cleaned up).

**III.   Discussion**

Wimberly asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 *et seq.*; New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*; federal regulations governing dialysis facilities that receive Medicaid funding, 42 C.F.R. § 494.70; and New York Public Health Law Section 2803-c; as well as negligent and intentional infliction of emotional distress and breach of fiduciary duty. (*See* Compl. ¶¶ 32-56). Wimberly's claims arising under federal law include discrimination on the basis of disability and retaliation.

   **A.   Discrimination on the Basis of Disability**

"Title III of the ADA prohibits discrimination against individuals with disabilities 'in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.'" *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 367 (S.D.N.Y. 2022) (quoting 42 U.S.C. § 12182(a)).[2] To state a claim under that provision, a plaintiff must plausibly allege (1) that he is disabled within the meaning of that statute; (2) that the defendant owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against the plaintiff by denying him a full and equal opportunity to enjoy the services the defendant provides. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citing 42 U.S.C. § 12182(a)). The same is true for Rehabilitation Act claims, so long as the defendant receives federal funds. *See Powell v. Bd. of*

---

[2] Though there exists some disagreement regarding whether "services" must be tied to a physical "place of public accommodation" in order to fall within Title III's requirements, *see, e.g.*, *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 17-19 (S.D.N.Y. 2022) (collecting cases), Atlantic does not make any similar argument here, nor could it, because transportation services are obviously tied to access to a physical dialysis clinic.

*Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004). Atlantic does not contest that Wimberly is disabled within the meaning of the ADA and Rehabilitation Act or that Atlantic operates a place of public accommodation that receives federal funds. (*See* MTD at 11.) Instead, Atlantic argues that it did not fail to provide any accommodation to Wimberly required by any law. (*See id.* ¶¶ 11-14.) That leaves only whether Wimberly adequately alleged that Atlantic discriminated against him.

The ADA and Rehabilitation Act define "discrimination" to include both "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," 42 U.S.C. § 12182(b)(2)(A)(ii); as well as the exclusion, denial of service to, segregation, or differential treatment of an individual with disability "because of the absence of auxiliary aids and services," *id.* § 12182(b)(2)(A)(iii), unless compliance would "fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations," *id.* § 12182(b)(2)(A)(ii), (iii). *See also Camarillo*, 518 F.3d at 156. Subsection 12182(b)(2)(A)(iii)'s implementing regulation makes clear that "auxiliary aids and services" refers to methods for making aurally or visually delivered information or materials available to individuals with auditory or visual impairments. *See* 28 C.F.R. § 36.303(b)(1)-(2); *see also Thorne v. Bos. Mkt. Corp.*, 469 F. Supp. 3d 130, 144-45 (S.D.N.Y. 2020) ("DOJ regulations . . . require a public accommodation to furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." (brackets and quotation marks omitted)).

Construed liberally, Wimberly's complaint asserts two theories of disability discrimination under the ADA and Rehabilitation Act:[3] (1) that Atlantic discriminated against Wimberly by failing to provide him the *service* of entering standing orders; and (2) that Atlantic discriminated against Wimberly by preventing him from accessing its *facility* by not entering standing orders (or doing so ineffectively). *Cf. Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 767-74 (S.D.N.Y. 2020) (conducting a similar analysis of an ADA claim by considering different theories of the public accommodation at issue); *see also* 42 U.S.C. § 12182(a). Because the analysis proceeds slightly differently under each theory, the Court addresses them in turn.

---

[3] Count IX asserts a violation of 42 C.F.R. § 494.70, a regulation promulgated by the federal Centers for Medicare & Medicaid Services conditioning coverage for dialysis facilities on their display of and compliance with enumerated patients' rights. Atlantic argues that that regulation does not provide a private right of action (otherwise known as a right for an individual to sue) because no congressional statute manifests explicit intent to create such a right. (*See* Mot. at 17-18 (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).) 42 C.F.R. § 494.70 has never been interpreted to create a private right of action, nor could it in the absence of a statutory directive. *See Alexander*, 532 U.S. at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). Moreover, like in *Alexander*, that the regulation places a condition on a dialysis facility's receipt of Medicaid funds suggests that the remedy for a violation is not private enforcement, but a reduction in or termination of funding. *See id.* at 289-91; *cf. Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183-86 (2023) (holding that 42 U.S.C. § 1396r(c) creates a private right of action enforceable by 42 U.S.C. § 1983 for nursing home residents because it uses clear "rights-creating language," unlike other statutes that "primarily direct[] the Federal Government's 'distribution of public funds' and [have] 'an aggregate, not individual, focus.'"). That comports with the well-established rule that there is no "private right of action to assert violations of any Medicaid statutory or regulatory provision related to reimbursement of transportation costs." *Maione v. Med. Answering Servs., LLC*, No. 17-CV-8106, 2018 WL 4682018, at *2 (S.D.N.Y. Sept. 28, 2018) (citing *Shakhnes*, 689 F.3d at 253-54). Because the Court determines that 42 C.F.R. § 494.70 creates no private right of action to remedy the particular violations Wimberly alleges, Count IX is dismissed with prejudice.

### 1. Entry of Standing Orders as a "Service"

First, Wimberly's complaint may be read to allege that the entry of standing orders is a service provided by Atlantic. It is true that, though the ADA does not require a public accommodation to provide goods and services it does not ordinarily provide, where a covered entity does ordinarily provide them, it must generally do so to nondisabled and disabled patrons alike. For collected cases, see *Dominguez v. Taco Bell Corp.*, 613 F. Supp. 3d 749, 755-56 (S.D.N.Y. 2020), *vacated on jurisdictional grounds*, No. 19-CV-10172, 2022 WL 20402263 (S.D.N.Y. Dec. 23, 2022). On this score, Atlantic argues that Wimberly's complaint about the entry of standing orders "concerns an unrelated transportation issue that does not fall within the scope of Defendant's services." (MTD at 12.) Construing Wimberly's allegations to raise every plausible inference of an actionable claim, as the Court must for a *pro se* litigant, the Court may infer from the complaint that the entry of standing orders (rather than transportation itself) is a service provided by Atlantic to its patients. Atlantic's statement to the contrary is not properly considerable on a motion to dismiss.

However, Wimberly's claim may not proceed on the standing-order-as-service theory for a different reason: Standing orders are a service provided exclusively to the disabled. "The purpose of the disability discrimination statutes is 'to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied.' In keeping with this purpose, the [Second Circuit] has repeatedly held that a plaintiff may not challenge the adequacy of services provided exclusively to the disabled under either the ADA or the Rehabilitation Act." *Greene v. City of New York*, 725 F. Supp. 3d 400, 424 (S.D.N.Y. 2024) (citation to *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) omitted). "[N]either the ADA nor the Rehabilitation Act establish[es] an obligation to meet a disabled person's particular needs vis-à-vis the needs of other handicapped individuals, but mandate only that the services

provided . . . to non-handicapped individuals not be denied to a disabled person because he is handicapped." *Pfrommer*, 148 F.3d at 83 (citing *Flight v. Gloeckler*, 68 F.3d 61, 64 (2d Cir. 1995)). In other words, even if the entry of standing orders were considered a service provided by Atlantic, it did not deny that service to Wimberly because of his disability, as he alleges himself that he was entitled to standing orders only because of his disability (*see* Compl. ¶¶ 7-8.) New York's Medicaid regulations, which restrict use of free transportation to recipients needing it by virtue of a medical condition, confirm that result.

One potential exception to that principle exists for prisoners who are denied transportation to outside medical appointments. *See Allah v. Goord*, 405 F. Supp. 2d 265, 280-81 (S.D.N.Y. 2005) (permitting an ADA claim to proceed based on the allegation that insufficient transportation offered to a disabled inmate prevented the inmate from enjoying the benefits of outside medical services); *see also Est. of Crandall v. Godinez*, No. 14-CV-1401, 2015 WL 1539017, at *6 (C.D. Ill. Mar. 31, 2015) (explaining *Allah*'s holding as relating to prison inmates unable to access outside facilities because of inadequate transportation); *Burton v. Wexford Healthcare Sources*, No. 24-CV-701, 2024 WL 1620154, at *6 (S.D. Ill. Apr. 15, 2024) (holding that no ADA claim existed based on a "single transportation incident because Plaintiff did not allege that the transportation issue prevented him from accessing a medical service"). But that rule is best explained by the total inability of prisoners to access those appointments without an affirmative provision of transportation services from the prison which is responsible for their care, rendering a denial of transportation a denial of medical services entirely—a situation distinct from the present case. Accordingly, Wimberly has not adequately alleged that he was denied access to a service offered by Atlantic because of his disability.

### 2. Access to Atlantic's "Facility"

Second, Wimberly's complaint may also be read to allege that Atlantic bars disabled patients from visiting its facility by not entering standing orders entitling those disabled patients to transportation. Read in such a way, Wimberly may proceed past the Second Circuit's prohibition on ADA claims alleging the inability to obtain a service provided solely to the disabled. *See supra* § III.A.1. And he also faces no obstacle in the form of Atlantic's argument that no specific legal obligation exists to enter standing orders (*see* MTD at 12-13), as neither the ADA nor the Rehabilitation Act requires an independent source of legal obligation in order to require a defendant provide a reasonable accommodation. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 274-75 (2d Cir. 2003) ("We have specifically embraced the view that the Rehabilitation Act requires affirmative accommodations to ensure that facially neutral rules do not in practice discriminate against individuals with disabilities."). Still, Atlantic is correct that New York's Medicaid regulations do not *require* medical providers to enter standing orders.[4] Instead, Wimberly's claim runs aground for a more fundamental reason: He does not allege that Atlantic's facility itself is inaccessible, and neither the ADA nor the Rehabilitation Act imposes on Atlantic an obligation to transport Wimberly to its facility.

In fact, Wimberly alleges that he visits the facility regularly and makes frequent use of its services as does any other nondisabled patient. (*See, e.g.*, Compl. ¶¶ 16, 22, 26.) Instead,

---

[4] Wimberly seeks leave to file a surreply concerning an Atlantic employee's alleged representation that it was Atlantic's "responsibility" to enter standing orders on Wimberly's behalf. (See ECF No. 47 at 1.) But even such a promise would not expand Atlantic's obligations under the ADA or Rehabilitation Act. *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011) ("[R]etracting a gratuitous promise [to provide free transportation] does not amount to a discriminatory act or an adverse action [under the ADA]."). The allegations Wimberly intends to include in his proposed surreply are thus irrelevant. Accordingly, his letter motion is denied.

Wimberly alleges that Atlantic's failure to enter standing orders requires that he "coordinate and fund transportation himself despite his reliance on Medicaid." (*Id.* ¶ 9.) Put differently, Wimberly's access to Atlantic's facility is no different than any nondisabled person's, except that he is allegedly denied use of free transportation provided by a third party (the State of New York). But a public accommodation "has no obligation to provide free transportation . . . and challenging the refusal to provide such transportation does not properly allege a discriminatory act or adverse action." *A Soc'y Without a Name for People Without a Home Millennium-Future-Present v. Commonwealth of Virginia*, 699 F. Supp. 2d 787, 803 (E.D. Va. 2010), *aff'd sub nom.*, 655 F.3d 342 (4th Cir. 2011). The barriers to access Wimberly faces—the expenses and hassle of arranging his own transportation—were not created or maintained by Atlantic, even if Atlantic has some method (i.e., entering a standing order) of alleviating those barriers.

That facilities like Atlantic are not required by the ADA or Rehabilitation Act to enter standing orders is all the more obvious in light of the state's Medicaid regulations themselves, which require medical providers to enter standing orders only on the basis of medical need. *See* 18 N.Y.C.R.R. § 505.10. The regulations are structured that way because a Medicaid recipient's medical providers, in New York's view, are the best positioned to determine the recipient's need for transportation. *See* Policy Manual at 12. To extend the ADA and Rehabilitation Act to this context would improperly interpose those statutes into medical decision-making, requiring courts to second-guess the determinations of medical providers. That is not only judicially unworkable but also far beyond the intended scope of the statutes Wimberly invokes. *See Smith v. City of New York*, No. 15-CV-4493, 2016 WL 4574924, at *11 (S.D.N.Y. Sept. 1, 2016) ("It is well established that complaints about medical treatment are generally insufficient to state a claim

under the ADA.") (citing *United States v. Univ. Hosp., State Univ. of N.Y. at Stony Brook*, 729 F.2d 144, 156-60 (2d Cir. 1984)).

Finally, it follows naturally from the prior two points that, if Wimberly has no actionable right, enforceable against Atlantic, for transportation under the ADA or Rehabilitation Act, he likewise has no cause of action arising from the allegedly insufficient transportation that he did receive. But even if that were not the case, where courts have found plaintiffs entitled to some form of transportation under the ADA or Rehabilitation Act, they routinely dismiss claims that that transportation was insufficient or inconvenient. *See, e.g.*, *Wagoner v. Lemmon*, 778 F.3d 586, 593 (7th Cir. 2015) ("Wagoner says only that he was inconvenienced with longer waits and humiliation, as when he had to crawl off the regular van because it did not accommodate his wheelchair. These disconcerting allegations do not amount to a denial of services within the meaning of [the ADA or the Rehabilitation Act]."); *G. v. Hawaii*, No. 08-CV-551, 2010 WL 3489632, at *16 (D. Haw. Sept. 3, 2010) ("Plaintiff L.P. cannot establish that he was denied any meaningful access to benefits based upon an alleged failure to provide transportation services when L.P. refused to use the transportation services that were provided."); *Oberpriller v. Cal. Dep't of Corr. & Rehab.*, No. 10-CV-3782, 2011 WL 3956361, at *4 (N.D. Cal. Sept. 7, 2011) (holding that the allegation that a prisoner was transported in a non-ADA-compliant vehicle to a medical appointment did not violate the ADA or Rehabilitation Act).[5]

---

[5] It is possible that Wimberly's claims sound in medical malpractice, rather than as ADA or Rehabilitation Act violations. *See Rossy v. City of Buffalo*, No. 17-CV-937S, 2023 WL 5723071, at *10 (W.D.N.Y. Sept. 5, 2023) ("[A]dministering emergency ambulatory care to a shooting victim poses numerous other concerns: the type, duration, and manner of first aid that should be administered; the appropriate response time of an ambulance to a shooting victim; whether the shooting victim is beyond medical intervention at any point during the treatment; the time to stabilize the victim for further treatment or transport for that treatment; and the appropriate medical facility for transport. Each of these issues is beyond common lay knowledge . . . [and] is therefore a question of medical malpractice."). Because the Court

Whether construed as a denial of a service or access to a facility, Atlantic's failure to enter standing orders does not constitute discrimination under the ADA or Rehabilitation Act. Accordingly, Counts V and VII are dismissed with prejudice.

### 3. Intentional Discrimination

Though Wimberly's complaint does not identify intentional discrimination as a separate theory of discrimination in violation of the ADA or Rehabilitation Act, his opposition to the motion to dismiss argues that "Plaintiff does state a plausible claim for intentional discrimination." (Opp. at 8 (capitalization altered).)

Once more, to prevail on a disability discrimination claim under the ADA or Rehabilitation Act, a plaintiff must plausibly allege "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public [accommodation's] services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003). With respect to the third element, "[a] qualified individual can base a discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'" *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). But that does not change the second element requiring the plaintiff to plausibly allege a discriminatory action giving rise to the claim under any theory. And because the Court concludes that Wimberly has not adequately alleged any failure to accommodate or adverse action for the purposes of retaliation, *see infra* § III.B, that he may also allege discriminatory intent does not rescue his claims. Moreover, nothing in the complaint,

---

declines to exercise supplemental jurisdiction over Wimberly's state-law claims, it need not determine whether the complaint states a plausible malpractice claim.

even generously read, suggests intent or animus on the basis of disability, which is required to plead intentional discrimination under the ADA and Rehabilitation Act. That Atlantic may have harbored animus toward Wimberly does not mean that his disability is the reason for the animus.

### B.     Retaliation

In addition to his discrimination claims, Wimberly asserts claims for retaliation in violation of the ADA and Rehabilitation Act. (*See* Compl. ¶¶ 44, 46.) The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter," and that it "shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(a)-(b). Courts in this Circuit do read the Rehabilitation Act to provide a right of action for retaliation, but that is based on a provision in that statute incorporating standards that govern employment cases. *See, e.g.*, *Quadir v. N.Y. State Dep't of Lab.*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014) (noting that the Rehabilitation Act incorporates, among other provisions, 42 U.S.C. § 12003); *see also* 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under . . . 42 U.S.C. [§§] 12001[-]12204 . . . as such sections relate to employment."). It is not clear that the Rehabilitation Act provides an independent right of action against retaliation for claims that do not relate to employment. However, the ADA clearly does provide such a right of action, and the Second Circuit has explained that the standards governing the two are interchangeable. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). That is sufficient for the Court to proceed to the merits.

"[T]he elements of a retaliation claim under either [the Rehabilitation Act] or the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff

14

was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ., City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002) (quotation marks omitted). Requests for accommodation constitute protected activity. *Id.* at 149 (citing *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999)). Though Atlantic makes much out of the general nature of Wimberly's allegations that he requested accommodation, the complaint and his opposition to the motion to dismiss raise a plausible inference that he requested the entry of standing orders from Atlantic's employees, complained when those orders were not entered, and threatened to sue. (*See* Compl. ¶¶ 15, 16, 26). That is sufficient to constitute protected activity. *See Smith*, 2016 WL 4574924, at *10 ("Generally, informal complaints and threats to take legal action qualify as protected activities.").

  However, Wimberly's complaint suffers from a different problem: He does not allege any "adverse decision or course of action" taken by Atlantic. There is surprisingly little case law concerning adverse decisions or actions outside of the employment context. Still, the employment cases are instructive insofar as they establish that "'petty slights, minor annoyances, and simple lack of good manners' will not generally deter a reasonable person from pursuing their rights." *Lafayette v. Blueprint Basketball*, No. 23-CV-631, 2025 WL 1013960, at *9 (D. Vt. Mar. 31, 2025) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006), to analyze a non-employment ADA retaliation claim). In his complaint, Wimberly alleges only that, upon hearing Wimberly discuss his complaints to another patient, an Atlantic employee instructed the other patient to not "listen to anything anyone else tells you [because] it's all [g]ossip." (Compl. ¶¶ 22-23.) In a subsequent letter to the Court, Wimberly complains also that he "received a request for an in-person meeting with facility administrators—outside of

15

legal channels," and that he received a letter indicating that "[s]everal employees have reported instances of harassment by you" and demanding that he "[c]ease discussing this litigation with others at the facility." (ECF No. 31 at 6.)

None of those allegations rise to the level of an adverse decision or course of action. Wimberly does not allege, for example, that he experienced any reduction in care or other services provided by Atlantic. Nor does he allege that Atlantic attempted to enforce its request that he cease discussing litigation or that he faced any consequence from the harassment complaints. Because none of the treatment Wimberly alleges would dissuade a reasonable person from vindicating their statutory rights, he has failed to plausibly allege any retaliation claim under the ADA or Rehabilitation Act. Accordingly, Counts VI and VIII are dismissed with prejudice.

### C. State-Law Claims

No federal-law claims remain in the action. And because the complaint alleges that Wimberly and Atlantic are both citizens of New York (*see* Compl. ¶¶ 5-6), the only basis for considering the remaining state-law claims is the Court's supplemental jurisdiction. Because it is ordinarily proper to decline to exercise supplemental jurisdiction over remaining state-law claims following the early dismissal of all federal-law claims, Counts I, II, III, IV, X, XI, XII, and XIII are dismissed without prejudice to refiling in state court. *See Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) ("Although the exercise of supplemental jurisdiction is discretionary, the ordinary case 'will point toward declining jurisdiction over the remaining state-law claims.'" (quoting *In re Merrill Lynch Ltd. P'Ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998))).

### D. Leave to Amend

The Second Circuit has made clear that "[d]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). However, a court need not grant leave to amend when amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). Here, Wimberly's disability discrimination claims concerning Atlantic's failure to enter standing orders are not cognizable under the ADA or Rehabilitation Act. No new allegations would alter that conclusion. Likewise, the conduct Wimberly alleges to be retaliatory falls too far short of the bare minimum to proceed past a motion to dismiss and would not be saved by any amendment. Accordingly, the Court holds that any amendment of Wimberly's federal claims would be futile.

### E. Remaining Motions

Even before opposing the instant motion to dismiss, Wimberly moved to disqualify Atlantic's counsel (ECF Nos. 30, 31) and for a declaratory judgment (ECF No. 32). The motion to disqualify counsel is frivolous and therefore is denied. For the same reasons as stated above, the motion for a declaratory judgment is denied with prejudice as to Wimberly's federal-law claims and denied without prejudice as to Wimberly's state-law claims. The Court also notes that many of Wimberly's additional motions were made in or supported by documents submitted directly to chambers in violation of a Court order, which are by their nature vexatious and thus do not qualify for the special solitude ordinarily afforded to a *pro se* litigant's filings. *See Eliahu*, 919 F.3d at 715.

### IV. Conclusion

Atlantic's motion to dismiss is GRANTED. Counts V, VI, VII, VIII, and IX are dismissed with prejudice. All other counts are dismissed without prejudice.

Wimberly's motion to disqualify Atlantic's counsel is DENIED.  Wimberly's motion for a declaratory judgment is DENIED, with prejudice as to his federal-law claims and without prejudice as to his state-law claims.  Wimberly's letter motion for leave to file a surreply is DENIED.

The Clerk is directed to close the motions at ECF Nos. 22, 30, 31, 32, 38, and 47, to enter judgment of dismissal, and to close this case.

SO ORDERED.

Dated: April 29, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge